IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

ABDULLAHI IBRAHIM,

    Petitioner,

v.

PATRICK GARTLAND,

    Respondent.

CIVIL ACTION NO.: 5:17-cv-48

**ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Petitioner Abdullahi Ibrahim ("Ibrahim"), who is currently in the physical custody of United States Immigration and Customs Enforcement ("ICE") at the Folkston ICE Processing Center in this District, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.[1] (Doc. 1.)  After the Court ordered service, Respondent filed a Response arguing that the Court should dismiss the Petition.  (Doc. 8.)  Ibrahim filed a Reply, as well as other pleadings. (Docs. 9, 11, 12.)  For the reasons which follow, I **RECOMMEND** that the Court **DISMISS WITHOUT PREJUDICE** Ibrahim's Petition, (doc. 1), **DENY** Ibrahim's Motion to Grant Petition, (doc. 9), **DIRECT** the Clerk of Court to **CLOSE** this case, and **DENY** Ibrahim *in forma pauperis* status on appeal.

**BACKGROUND**

Ibrahim, a native and citizen of Ghana, applied for admission to the United States on May 6, 2016, at the San Ysidro, California, port of entry by claiming a fear of returning to his country. (Doc. 8-1, p. 1.)  After referral for a credible fear interview, an Asylum Pre-Screening Officer

---

[1] Patrick Gartland is the Warden of the Folkston Processing Center and is the proper respondent to this petition. See Rumsfeld v. Padilla, 542 U.S. 426, 436 (2004). Therefore, the Clerk of the Court is **DIRECTED** to amend the caption of this case to name Patrick Gartland as the proper Respondent.

with the United States Citizenship and Immigration Services referred Ibrahim's case to an Immigration Judge. (Id. at 2.) On October 18, 2016, the Immigration Judge ordered Ibrahim removed to Ghana. (Id.) He did not appeal the Immigration Judge's decision.

However, Ibrahim has not yet been removed to Ghana. On October 23, 2016, ICE mailed a request to the Embassy of Ghana for issuance of travel documents, but Ghana has yet to issue those documents. (Id.) Accordingly, ICE conducted reviews of Ibrahim's custody conditions on January 24, 2017, and April 24, 2017. (Id.) During both of those reviews, ICE found that Ibrahim's removal was likely in the reasonably foreseeable future, and thus, decided to continue Ibrahim's detention. (Id.) On May 23, 2017, ICE Removal and International Operations (RIO), a division of Enforcement and Removal Operations at ICE Headquarters which assists the local field offices in obtaining travel documents, advised the Miami Field Office that the Embassy of Ghana would soon be conducting telephonic interviews with a large number of detainees. (Id.) On May 31, 2017, RIO informed the Miami Field Office that the Embassy of Ghana intended to complete a list of individuals to be interviewed by the end of June of 2017. (Id.)

Ibrahim filed this Section 2241 action on May 1, 2017. (Doc. 1.) Therein, he argues that he should be released pursuant to the ruling in Zadvydas v. Davis, 533 U.S. 678 (2001). Ibrahim contends that he will not likely be removed to Ghana in the reasonably foreseeable future because the government of Ghana "is [a] dictatorial and corrupted administration" that "do[es] not want Ghana Citizens to come back to their home land Country [sic]." (Doc. 1, pp. 10–11.) On May 9, 2017, the Court ordered the United States Marshal to serve the originally named Respondents with a copy of the Petition and to respond to the Petition within twenty days of

service. (Doc. 5.) The Marshal served Respondent on May 15, 2017, (doc. 6), and Respondent filed his Response, through counsel, on June 5, 2017.[2]

## DISCUSSION

### I.      Dismissal of Ibrahim's Section 2241 Petition

Under the Immigration and Nationality Act, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. §1231(a)(1)(A). During that period, the Attorney General must detain the alien. 8 U.S.C. §1231(a)(2). However, any continued detention under that statute must not be indefinite. In Zadvydas, the United States Supreme Court held that indefinite detention of aliens raises serious constitutional concerns. 533 U.S. at 701. Thus, once an order of removal becomes final, ICE should make every effort to remove the alien within a reasonable time. Id. The Supreme Court found that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. Id.

However, this does not entail that every alien detained longer than six months must be released. Id. Rather, to state a claim for habeas relief under Zadvydas, an alien must (1) demonstrate that he has been detained for more than six months after a final order of removal; and (2) "provide evidence of a good reason to believe that there is no significant

---

[2] Ibrahim filed a Motion to Grant Petition for Writ of Habeas Corpus on June 6, 2017. (Doc. 9.) Therein, he argued that Respondent failed to comply with the Court's Order to file a Show Cause Response within twenty days from the date of service. (Doc. 9.) However, Ibrahim confuses the date of the Court's Order with the date of service. While the Court's Order was issued on May 9, 2017, Respondent was not served until May 15, 2017. The Court set the response deadline twenty days after service, resulting in a deadline of June 4, 2017. That deadline fell on a Sunday. Thus, pursuant to Federal Rule of Civil Procedure 6(a)(1)(C), the deadline was extended to Monday, June 5, 2017, and Respondent timely filed his Show Cause Response on that day. Additionally, even if the Response had been untimely (which it was not), neither default judgment nor summary judgment is appropriate due to a respondent's failure to timely respond to a petition for writ of habeas corpus. See, e.g., Aziz v. Leferve, 830 F.2d 184, 187 (11th Cir. 1987) (finding that a default judgment is not contemplated in habeas corpus cases); Goodman v. Keohane, 663 F.2d 1044, 1048 n.4 (11th Cir. 1981) (rejecting petitioner's argument that the government's tardiness in responding to petition entitled him to habeas relief). Therefore, I **RECOMMEND** that the Court **DENY** Ibrahim's Motion to Grant Petition, (doc. 9).

likelihood of removal in the reasonably foreseeable future." Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002). If a petitioner makes these showings, the burden shifts to the Government to respond with evidence to rebut that showing. Zadvydas, 533 U.S. at 701.

Ibrahim has satisfied the first prong of Akinwale (i.e., detention beyond the six-month removal period). His final order of removal was issued on October 18, 2016, and he did not appeal. Thus, the six-month mark passed on April 18, 2017. Nevertheless, he has failed to satisfy the second prong of Akinwale. He has not presented any evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Akinwale, 287 F.3d at 1052. Ibrahim has not argued, much less presented evidence, that any department of the United States has hindered his removal. Rather, in his Petition, he makes conclusory arguments that the government of Ghana is a dictatorship that does not want its citizens to come back to their homeland. (Doc. 1, pp. 10–11.) Additionally, in his Reply, Ibrahim argues that he is not likely to be removed in the reasonably foreseeable future because ICE has been unable to remove him during the six months following his removal order, despite his cooperation. (Doc. 11, pp. 4–5.)

Ibrahim's conclusory and generalized allegations regarding Ghana's intentions and practices are insufficient to state a claim that there is no significant likelihood of his removal in the reasonably foreseeable future. Fahim v. Ashcroft, 227 F. Supp. 2d 1359, 1365 (N.D. Ga. 2002) (Egyptian petitioner's "bare allegations are insufficient to demonstrate a significant unlikelihood of his removal in the reasonably foreseeable future."). Ibrahim's wholly conclusory allegations lack any support in the record and do not require consideration by this Court, let alone entitle him to any relief. See Caderno v. United States, 256 F.3d 1213, 1217 (11th Cir. 2001) (vague, conclusory allegations in a Section 2255 motion insufficient to state basis for

relief); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (quoting Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (petitioner not entitled to habeas relief "when his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible.'")).

Equally unavailing is Ibrahim's argument that the Court can somehow presume that he will not be removed in the reasonably foreseeable future because he was not removed within 180 days of the removal order. Under Ibrahim's line of reasoning, the Court must grant relief any time a petitioner is held for longer than six months after a removal order. This would render the second prong of Akinwale meaningless and contradict the holding of Zadvydas. Furthermore, Ibrahim does not explain how the past lack of progress in the issuance of his travel documents means that Ghana will not produce the documents in the foreseeable future. See Fahim, 227 F. Supp. 2d at 1366 ("The lack of visible progress since the INS requested travel documents from the Egyptian government does not in and of itself meet [petitioner's] burden of showing that there is no significant likelihood of removal. '[I]t simply shows that the bureaucratic gears of the INS are slowly grinding away.' [Khan v. Fasano, 194 F. Supp. 2d 1134, 1137 (S.D. Cal. 2001).] In other words, the mere fact that the Egyptian government has taken its time in responding to the INS request for travel documents does not mean that it will not do so in the future."). While Ibrahim has shown bureaucratic delays in his removal proceedings, he has not demonstrated a significant unlikelihood of his removal in the reasonably foreseeable future.

Furthermore, even if the Court were to accept Ibrahim's speculation regarding Ghana's inaction on his proceedings, Respondent has rebutted that showing. The Government has presented evidence that the Ghana Embassy has responded in some measure to ICE's request for travel documents. (Doc. 8-1, p. 2.) The Ghana Embassy advised ICE that it was scheduling

5

telephonic interviews with a large number of detainees in late June of 2017. (Id.) This contradicts Ibrahim's claims that Ghana refuses to take any action on ICE's removal requests. Additionally, Respondent has produced an affidavit from Alberto Cornavaca, an ICE Deportation Officer, who declares ICE will schedule Ibrahim's removal as soon as Ghana issues his travel documents. (Doc. 8-1, p. 3.)

Ibrahim has failed to present any facts indicating that ICE is incapable of executing his removal order and that his detention will be of an indefinite nature. However, circumstances could eventually change in Ibrahim's removal situation to the point that he could present a plausible claim for relief. Accordingly, the Court should **DISMISS** his Petition **WITHOUT PREJUDICE**. Akinwale, 287 F.3d at 1052 ("Because circumstances may ultimately change in [petitioner's] situation, we affirm the dismissal without prejudicing [petitioner's] ability to file a new § 2241 petition in the future that may seek to state a claim upon which habeas relief can be granted.").

## II.   Leave to Appeal *in Forma Pauperis*

The Court should also deny Ibrahim leave to appeal *in forma pauperis*. Though Ibrahim has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or

argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous, and thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Ibrahim's Petition and Respondent's Response, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **DISMISS WITHOUT PREJUDICE** Ibrahim's Petition, (doc. 1), **DENY** Ibrahim's Motion to Grant Petition, (doc. 9), and **DIRECT** the Clerk of Court to **CLOSE** this case. I further **RECOMMEND** that the Court **DENY** Ibrahim leave to proceed *in forma pauperis* on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Ibrahim and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 27th day of July, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA